WULF C. KRABBENHOFT v. CHRISTIAN H. WRIGHT.[1]

June 21, 1907.

Nos. 15,003—(90).

**Judgment—Boundary Line.**

The owner of the northeast quarter of a given section brought a statutory action to determine boundary lines against the owner of the southeast quarter of the same section. Judgment was entered establishing the

[1] Reported in 112 N. W. 421.

boundary line between the two tracts of land found to belong to the two parties respectively. Subsequently one owner brought ejectment against the other to recover possession of a wedge-shaped tract along the boundary line between the two tracts, title to which he claimed through adverse possession. It is *held*:

1. That the statutory action to determine boundary lines (sections 4454–4456, R. L. 1905) involved the adjudication of all adverse claims in respect to any portion of the land involved, which it may have been necessary to have determined for the complete settlement of the boundary lines.

2. That the judgment in that action settled all disputes as to title and that subsequently ejectment would not lie. ·

Action of ejectment in the district court for Clay county. The case was tried before Baxter, J., who found in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*F. H. Peterson,* for appellant.

*C. A. Nye,* for respondent.

JAGGARD, J.

This was an action of ejectment. The answer asserted title by adverse possession. The case was tried by the court. Upon findings of fact and conclusions of law filed, judgment was ordered for the defendant and respondent. Plaintiff took this appeal from the order denying his motion for a new trial.

The facts are undisputed. Plaintiff and defendant have owned and occupied for years the east half of section 16, township 138, range 47, in Clay county. Plaintiff owned the northeast and defendant the southeast quarter. The subject-matter of the suit is a narrow, wedge-shaped tract, lying along the north boundary of the southeast quarter of said section. The vertex of this wedge is at the quarter post on the east line of the section, and at the quarter line on the west it is fifty four feet wide, running from north to south. The evidence shows that the defendant has been in possession of this land for more than the statutory period. The plaintiff claims it by virtue of a judgment of the district court of Clay county dated June 10, 1905, in a case in which the defendant in this case was plaintiff and the plaintiff herein was defendant.

The action was brought under the statute by defendant to determine the boundary line between the farms of said parties. That judgment determined that the defendant was the owner and in possession of the said southeast quarter and that the plaintiff was the owner and in possession of the northeast quarter, and established the boundary line between the lands of the two parties to this action so as to bring this wedge-shaped tract within the limits of plaintiff's land, to wit, the northeast quarter.

The only question in this case is whether this judgment in the statutory action to determine boundary lines precludes the plaintiff from subsequently maintaining ejectment. Defendant's position is this: The complaint, answer, and reply in the original proceeding did not put in issue the ownership, nor seek to quiet the title to any lands in that action. The judgment, moreover, determined only two matters: (1) The exact location of the quarter corner in question; (2) the quarter line between the north half and the south half of section 16. The case was not brought, tried, nor determined upon the theory that the title to any land was to be determined. Those questions were all reserved, and it is those questions alone that defendant seeks to litigate in the case at bar.

This position we regard as untenable. The statutory action to determine boundary lines was not designed to advance the merely patriotic interest of citizens in establishing correct government surveys. Section 4454, R. L. 1905, requires the court to "determine any adverse claims in respect to any portion of the land involved which it may be necessary to determine for a complete settlement of the boundary lines." This paramount object of the action is consistently carried out by provisions for additional parties. Section 4455. "When in any such action it appears to the court that any owner, lienholder, or person interested in any of the tracts involved ought, for the full settlement and adjudication of all the questions involved, to be made a party, the court shall stay the proceeding and issue an order requiring such persons to come in and plead therein" as is therein provided. The object of the act was not alone the academical one of determining boundary lines, but the practical one of settling the controversies between all possible parties concerning both ownership and boundary lines. Accordingly in the original case between these parties the court adjudicat-

ed that they owned, respectively, the northeast and the southeast quarters of a given section, and that a certain line, sufficiently described, constituted the boundary between them. That judgment ended the whole dispute between these parties. If either had any adverse right to the land claimed by each owner, he should have asserted it in that action. If it was not so asserted, it was waived. The cause of action therein adjudicated was the right of each party to the land and the exact location of the boundary line. The controversy between the parties in the present action is therefore res adjudicata.

Defendant's apparent misapprehension as to the effect of the action is not an unnatural nor an unreasonable one. The plaintiff changed counsel, so that any verbal understanding as to the character of the previous litigation could not be given effect. As a result, it may be that defendant has been deprived of his right to assert title to part of this land by adverse possession. If he has a remedy, however, it is by application in the original proceeding, and not by ejectment.

Order reversed.